**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDERSON JOSE FRANCISCO PAULINO, | ) ) ) ) |
| | ) 3:26-CV-898 |
| Petitioner, | ) ) ) |
| v. | ) ) |
| LEONARD ODDO, *et al.*, | ) ) ) |
| Respondents. | ) ) ) |

## MEMORANDUM OPINION

The Court already granted a conditional writ of habeas corpus, ordering that Mr. Francisco Paulino be given a *fair* bond hearing before an immigration judge. He was given a bond hearing. But it was hardly fair. After a review of the IJ's decision and the transcript of the bond hearing, the bond hearing was merely a sham. That is, the IJ robotically concluded that because Mr. Francisco Paulino illegally entered without inspection, he was a flight risk.

This kind of mechanical recitation of a few generalized factors is a red flag; it means that the bond hearing wasn't individualized, so it wasn't fair. Because Mr. Francisco Paulino's hearing lacked basic fairness required by due process, the Court will now order his immediate and unconditional release from custody.

## BACKGROUND

On May 13, 2026, Mr. Francisco Paulino filed his original habeas-corpus petition (ECF 1), which this Court conditionally granted on May 21, 2026. ECF 7. As was made expressly clear by the Court, Mr. Francisco Paulino was to be given a bond

- 1 -

hearing before an IJ, and the government was required to "ensure that such a hearing include the required due process, *i.e.*, at a minimum, factfinding based on a record produced before the decisionmaker and disclosed to [Mr. Francisco Paulino]; an opportunity to make arguments on [Mr. Francisco Paulino]'s behalf; and the right to an individualized determination of [Mr. Francisco Paulino]'s interests." *Id.* (citing *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022)). The Court also stated: "The Court trusts the [IJ] to comply with this order and ensure that [Mr. Francisco Paulino] is provided due process, and therefore the [IJ] shall explain his or her individualized determination on the record." *Id.* (citing *Kamara v. Atty Gen. of U.S.*, 420 F.3d 202, 212 (3d Cir. 2005).

On June 3, 2026, a bond hearing was held at the Elizabeth Immigration Court before an IJ. ECF 9 at 2-1.[1] During this hearing, in addition to presenting that Mr. Francisco Paulino may be eligible for asylum and withholding of removal, his counsel "proffered that [Mr. Francisco Paulino] entered the United States approximately three and a half years earlier; was released on humanitarian parole; complied with the conditions imposed by ICE upon his release from custody for years[;]" "had an ICE check-in scheduled for June 23, 2026, but was arrested before that date[;]" "is married to a United States citizen; applied for adjustment of status before being placed in removal proceedings; resides with his U.S.-citizen spouse[;]" "has his spouse as his sponsor[;]" and that this spouse "filed an I-130 petition on behalf of [Mr.

---

[1] No one disputes that Mr. Francisco Paulino isn't a danger to the community, not even the IJ. *See* ECF 9-1 at 5:8–9 ("I do not feel that he's a danger to the community. My decision is related solely as to flight risk."). So the Court limits its review to the IJ's analysis of flight risk.

Francisco Paulino]'s son, who remains in the Dominican Republic[.]" *Id.* at ¶ 7–9; *see generally* ECF 9-1. Counsel also provided evidence to the IJ that Mr. Francisco Paulino's marriage is *bona fide*, and requested that the judge "grant a reasonable bond in this matter that might mitigate any Court concerns regarding the risk of flight." ECF 9-1 at 3:16–21, 4:15–17.

In response, Respondents argued that Mr. Francisco Paulino "does pose a flight risk" because "he was an illegal entrant into the United States not very long ago[;]" "[h]is ties to the community are very limited[;]" his asylum application was untimely; and, even if relief were granted, third-country removal could still be pursued by the government. *Id.* at 4:19–5:6.

Upon hearing these arguments, the IJ concluded that Mr. Francisco Paulino was a flight risk "based upon the fact that nothing was filed until he was apprehended here." *Id.* at 5:7–20.[2] The IJ also stated that, "despite what [he] has pending[,]" Mr. Francisco Paulino is "a citizen of the Dominican Republic" with "no legal status here" who admitted to entering "illegally without inspection."[3] *Id.*

---

[2] The IJ did not repeat this statement when asked later for a statement of his reasons on the record, nor did he specify to which "apprehension" he was referring (the original apprehension on November 30, 2022, or the subsequent apprehension on May 5, 2026). ECF 9-1 at 7:1–7; ECF 1 at ¶ 25–26, 30. Regardless, Mr. Francisco Paulino lawfully married his U.S. citizen spouse on May 11, 2024, and this spouse filed an I-130 petition on Mr. Francisco Paulino's behalf on or about January 28, 2026, concurrent with his own filing of an application for adjustment of status. ECF 1 at ¶ 28–29. The Court therefore gives no weight to this justification.

[3] The IJ also stated: "When [Mr. Francisco Paulino] went through in Texas, he immediately requested (indiscernible) in regards to inadmissibility." ECF 9-1 at 5:12–14. This part of the transcript is indiscernible, and no party here clarified it. *See* ECF 9; ECF 12.

After the IJ announced his decision, Mr. Francisco Paulino's counsel sought clarification from the judge, pointing out that Mr. Francisco Paulino applied for adjustment of status and questioning the weight given to his unlawful entry. *Id.* at 5:21–6:18. Upon being questioned, however, the IJ told Mr. Francisco Paulino's counsel to "[s]top talking[,]" repeated his reasoning, and stated that there is an appeal date if she disagreed "with the decision[.]" *Id.* at 6:19–7:22.

On June 9, 2026, Mr. Francisco Paulino's counsel filed the motion at issue here, alleging that "the June 3 hearing did not satisfy the minimum due-process safeguards ordered by the Court" and requesting immediate release as a result. ECF 9 at ¶ 32–34. In turn, Respondents replied that the Motion should be denied because it is "couched in disagreement with the [IJ]'s findings rather than a failure to comply with the Court's May 21, 2026, Order." ECF 12 at 2. [4]

---

[4] Respondents also argue that the "proper venue for [Mr. Francisco Paulino]'s argument is before the Board of Immigration Appeals." ECF 12 at 2. But the Court finds that such exhaustion (if even required) would be futile. *See A.D. v. Oddo*, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026) (Haines, J.) (questioning whether such a requirement would even exist where a petitioner was seeking to enforce a previously issued writ); *Mujica-Marquez*, 2026 WL 1483740, at *3 ("As it relates to an appeal of the denial of bond, futility is apparent because it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to a district court's order—the BIA has, for example, consistently refused to reach and decide constitutional questions.") (cleaned up). Regardless, courts "also excuse prudential exhaustion when the challenged agency action presents a clear and unambiguous violation of statutory or constitutional rights." *See United States v. Dohou*, 948 F.3d 621, 628 (3d Cir. 2020) (cleaned up). Here, as discussed below, Mr. Francisco Paulino was deprived of a constitutionally sufficient bond hearing. As such, "to the extent that any exhaustion issue exists," the Court finds it excused. *See A.D.*, 2026 WL 1251470, at *3.

## DISCUSSION & ANALYSIS

The Court starts with jurisdiction.  Mr. Francisco Paulino challenges the fairness of the bond hearing, which implicates the scope of the Court's jurisdiction. Although a district court lacks jurisdiction to review an IJ's discretionary determinations underlying a bond decision (*see* 8 U.S.C. § 1226(e)), "it can review whether the bond hearing was fundamentally unfair in violation of [the district court's] order." *See Bobadilla v. Immigr. & Customs Enf't*, No. 2:26-CV-06692 (BRM), 2026 WL 2137941, at *2 (D.N.J. July 24, 2026) (citing *Ghanem*, 2022 WL 574624, at *2); *see also A.D.*, 2026 WL 1251470, at *3.

"And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a 'court has the inherent power to enforce its own orders.'" *See Mujica-Marquez v. Hoover*, No. 4:26-CV-00623, 2026 WL 1483740, at *2 (M.D. Pa. May 27, 2026) (quoting *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020); *see also A.D.*, 2026 WL 1251470, at *2 ("As a general proposition, it is beyond reasonable dispute that a habeas court retains jurisdiction to enforce compliance with an order conditionally granting the writ."). Thus, the Court has jurisdiction over the motion to enforce its prior order.

Turning next to the merits of the motion, in a fundamentally fair bond hearing, a detainee is entitled to the following "three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized

determination of his or her interests." *See Serrano-Alberto v. Att'y Gen.* U.S., 859 F.3d 208, 213 (3d Cir. 2017) (quotations omitted).

Importantly, when conducting this individualized determination, the "mechanistic reliance on factors that are common to all § 1226(a) detainees will not suffice" to satisfy due process. *See Mujica-Marquez,* 2026 WL 1483740, at *4 (citing *Santos v. Lowe,* No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020)) (cleaned up). Rather, "for a bond hearing to adequately provide an individualized determination, any evidence relied upon by an IJ must be individualized and support a finding that continued detention is needed to prevent the detainee from fleeing or harming the community." *Id.* (cleaned up).

Here, the June 3, 2026, bond hearing was simply a scripted, "mechanistic reliance" on generalized common factors. For example, when pressed by Mr. Francisco Paulino's counsel to explain the denial of bond, the IJ offered three reasons: "He's a citizen of the Dominican Republic. He doesn't have any legal status here. He admits he entered illegally without inspection." ECF 9-1 at 7.[5]

Yet all three of those reasons are common to nearly every *Hurtado* detainee. *See Mujica-Marquez,* 2026 WL 1483740, at *4 ("[A]lthough [the petitioner] entered the country illegally, this factor is common to nearly all individuals receiving a bond hearing pursuant to § 1226(a), and therefore cannot support the denial of bond, as it is far too generalized a concern."); *Lemus Crispin v. Bondi,* No. 1:26-CV-191, 2026

---

[5] The Court also reviewed the written "Order of the Immigration Judge" that was provided by Respondents. *See* ECF 11-1 at 1; 16-1 at 1. This order simply states that Mr. Francisco Paulino "has failed to establish that he is not a flight risk, nor that any amount of bond would mitigate his flight risk." *See* ECF 11-1 at 1; 16-1 at 1.

WL 768859, at *5-6 (E.D. Va. Mar. 18, 2026) ("But a noncitizen's unlawful status cannot provide a legitimate consideration upon which an [IJ] may deny a request for release on bond under § 1226(a) given that every individual who appears before an [IJ] for custody redetermination lacks lawful status."); *c.f. Niangane v. Noem,* No. 3:25-CV-00488, 2026 WL 916344, at *3-4 (W.D. Pa. Feb. 11, 2026) (Haines, J.) (finding that an individualized hearing was conducted where the IJ addressed specific concerns on the record, such as the lack of permanent address and community ties). "Such rationale. . . would effectively transform discretionary detention into de facto mandatory detention." *Segura Serrano v. Scott,* No. 2:26-CV-01268-LK, 2026 WL 1674357, at *7 (W.D. Wash. May 26, 2026).

Thus, based on the record before it, the Court finds that the IJ failed to comply with the Court's order to provide an individualized bond hearing and failed to ensure that Mr. Francisco Paulino was provided due process. *See* ECF 7; *see also Lemus Crispin*, 2026 WL 768859, at *5 (finding consideration of such common factors to "violate[] both § 1226(a)'s requirement of an individualized hearing and fundamental due process principles").

Finally, the Court considers the appropriate remedy. In this particular case, the Court finds that release, rather than ordering another bond hearing, is an appropriate equitable remedy. That is, because "Respondents have now violated [Mr. Francisco Paulino's] due process rights twice: first when [Respondents] initially detained him unlawfully under § 1225(b), and then again when [Respondents] deprived him of a constitutionally adequate bond hearing[,]" the Court finds that the

appropriate remedy is to order Mr. Francisco Paulino's immediate release from custody.[6] *Mujica-Marquez*, 2026 WL 1483740, at \*5 (cleaned up).

## CONCLUSION

For the above reasons, the Court **GRANTS** Petitioner's Motion to Enforce Judgment (ECF 9).

\*\*\*\*\*

As such, the **WRIT SHALL ISSUE**, on these terms:

1. Respondents shall release Petitioner from immigration detention **FORTHWITH**, subject to conditions consistent with applicable law.

2. Respondents shall also provide written notice of Petitioner's release on the docket within 24 hours of its occurrence.

DATED this 11th day of August. 2026.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[6] The Court also notes that Respondents were forewarned that failure to comply with its previous order would result in Mr. Francisco Paulino's immediate release: "Respondents shall cause [Mr. Francisco Paulino] to be taken to a neutral [IJ] of the Executive Office of Immigration Review for an individualized bond hearing to occur within 30 days of this order, *or else release [Mr. Francisco Paulino] by such date.*" *See* ECF 7 (emphasis added). This individualized bond hearing has yet to occur, and it has been more than 30 days since the order. *Id.* So Mr. Francisco Paulino must be released. *See A.D.*, 2026 WL 1251470, at \*4 ("Finding unfair prejudice here, the undersigned is constrained to conclude that Respondents have failed to comply with the Order dated January 14, 2026, conditionally granting the Writ. Therefore, the Motion will be granted, the Writ will issue.").